```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Timber View Properties, Inc.,  :
      Plaintiff,       :
    v.                     :      Case No. 2:15-cv-2855
                            :      JUDGE GEORGE C. SMITH
M&T Property Investments LTD,  :      Magistrate Judge Kemp
      Defendant.       :

REPORT AND RECOMMENDATION

This case began in this Court as a straightforward mortgage foreclosure action. Plaintiff Timber View Properties, Inc., a Florida corporation, obtained, by assignment from the Citizens Bank of Logan, Ohio, mortgages on real property located in Hocking County, Ohio, and owned by Defendant M&T Property Investments LTD, an Ohio limited liability company. Timber View seeks to foreclose on the mortgages and have the property sold at foreclosure sale. In its complaint, it also requested the appointment of a receiver pursuant to Ohio Rev. Code §§2735.01 *et seq.* See Doc. 2.

On the same day the complaint was filed, Timber View moved for appointment of a receiver. (Doc. 3). In its motion, it represented that M&T consented to the appointment of a receiver and it identified a proposed receiver. The following day, the Court granted the motion. Its order (Doc. 4) appointed attorney David A. Skrobot as the receiver. The order, prepared by the parties, granted Mr. Skrobot plenary power to deal with the property in question, as described in Ohio Rev. Code §2735.04. It contained additional provisions, however, which provided that representatives of M&T, including Mark Anthony (the principal of M&T) would have unimpeded access to the property; that the

receiver could contract to have Mr. Anthony become involved in the management of the property; that the receiver could "disregard, without prior order of this Court, any lease" which is (although it does not explain who makes this determination) "incomplete, ineffective on its face, not in conformity with the statute of frauds, and/or legally inoperative as to third parties due to a failure to properly execute and/or record the instrument required by law." (Doc. 5, at 7). The receiver was authorized to treat such leasehold interests as void and to seek criminal charges against anyone, including an "occupying claimant," who refused a request by the receiver to leave the property. Id. Further, the order directs any person who has any documents or records pertaining to the property or any income associated with the property or "business activities presently and/or previously associated with the Receivership Estate" to turn those records and income over to the receiver. Id. at 8. Lastly, anyone claiming any interest in the property was enjoined from "commencing or continuing any action at law or suit or proceeding in equity to ... enforce any claim and/or right against all or any part of the property ... or its business operations ....." Id. at 10.

    What neither Timber view nor M&T told the Court, in connection with the motion to appoint a receiver and the order granting such powers to the receiver, is that Mr. Anthony, M&T's principal, and another individual, Karry Gemmell, a former business partner of Mr. Anthony's, had been engaged in litigation in the Hocking County Court of Common Pleas over issues which, at least tangentially (how tangentially is the subject of further discussion below) involve this same property, and that a receiver had also been appointed in that case. Mr. Gemmell has moved to intervene in this case, arguing that he has a legally protected interest in the subject matter of this action, and that the

agreed receivership order presented to the Court was specifically intended by the parties (including Timber View, which appears from the complaint simply to be an arms-length mortgage holder but which, according to Mr. Gemmell, is controlled by a friend of Mr. Anthony's and which bought the mortgages in order to bring this collusive case and to obtain the receivership order) to override orders issued by the Hocking County Common Pleas Court. The motion to intervene has been referred to the Magistrate Judge for this issuance of a Report and Recommendation.  See Doc. 13.  For the following reasons, the Court recommends that the motion to intervene be granted.

## I.  Factual Background

The multiple submissions from the parties - a motion to intervene, two responsive memoranda, and two reply briefs - contain a plethora of factual assertions.  Many (like the reference to the criminal conviction of one of Mr. Gemmell's associates and a copy of her photograph as it appears on the Ohio Department of Rehabilitation and Corrections website) are irrelevant to the legal issues presented in the motion to intervene, intended to be inflammatory, or both.  The Court will attempt to distill a basic statement of relevant facts from these filings, and resist the temptation to stray down the various side streets which have been only partially illuminated by the briefs.

These facts appear to be undisputed.  Mark Anthony, Karry Gemmell, and a company owned by Barry Gemmell (Karry's father), were the principals in a company named Hocking Peaks LLC.  In 2010, the parties signed an operating agreement for a business venture called Hocking Peaks Adventure Park.  As part of the business venture, Hocking Peaks entered into a 99-year lease for real property on which to operate a zipline and apparently some other types of outdoor adventure activity. M&T, Mr. Anthony's company and the defendant in this foreclosure action, was the

lessor; some or all of the property which is being foreclosed on here is also the property leased by M&T to Hocking Peaks.

Karry Gemmell ran the books for Hocking Peaks in 2010 and 2011. In 2012, Mr. Anthony took over that task. That same year, at least according to Mr. Gemmell, Mr. Anthony began to engage in some questionable financial transactions with company money, including writing himself a $39,000 check (which subsequently bounced) and transferring money in one of the company's bank accounts into an account belonging to a new start-up business, Hocking Peaks Adventure Park LLC, which was wholly owned by Mr. Anthony.

Concerned about this activity, Mr. Gemmell filed a case in the Hocking County Court of Common Pleas in 2013. He sought preliminary equitable relief. In a judgment entry filed on June 18, 2013, that court found reason to believe that Mr. Anthony had engaged in substantial self-dealing, and it ordered that a single new bank account be opened for the business, that all business receipts be deposited in that account, and that no sums over $2,000.00 could be withdrawn unless both Mr. Anthony and Mr. Gemmell authorized that withdrawal. See Motion to Intervene, Doc. 12, Ex. A.

Mr. Gemmell and Mr. Anthony continued to litigate their differences in state court, and that court issued a number of additional orders, finding that even after the first preliminary injunction order was issued, Mr. Anthony continued to engage in questionable transactions. Eventually, Mr. Gemmell moved for the appointment of a receiver for Hocking Peaks, pursuant to Ohio Rev. Code §2735.01. In a judgment entry filed on June 13, 2014, the court granted that request. It appointed a receiver and counsel for the receiver. Id., Ex. D. Finally, the state court authorized the receiver to borrow funds to reopen the business (it had apparently been closed by the receiver due to lack of

insurance), barred both Mr. Anthony and Mr. Gemmell from interfering with the receiver's efforts to reopen the business, authorized the receiver to operate the adventure park for five years, and, perhaps most significantly, for purposes of this case, barred both Mr. Anthony and Mr. Gemmell from "entering the site where the park is located without specific written consent of the receiver ...." Id., Ex. E.  Some, if not all, of those orders were appealed, but it appears they are all still in place, and that the receiver continues to file reports with the state court, the last one (which is an exhibit to one of the two reply briefs, Doc. 25) indicating that the receiver had received threatening communications from Mr. Anthony, was told by Mr. Anthony that he (the receiver) was a trespasser, and suggesting that the court restrict Mr. Anthony to only the portion of the property where his residence was located so that the receiver could use the remainder to operate the business.

## II.  Analysis

Rule 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Mr. Gemmell's motion to intervene is clearly timely.  Further, no existing party claims to represent his interest in this action adequately (they deny that he has any interest to represent). The crux of the disagreement here concerns the existence of a legally protected interest in the property that is the subject of this foreclosure action.

There is little dispute about the general principles which

-5-

govern intervention as of right. "Federal Rule of Civil Procedure 24, which governs interventions, is 'broadly construed in favor of potential intervenors.'" Gillie v. Law Office of Eric A. Jones, LLC, 2013 WL 4499955, *1 (S.D. Ohio Aug. 21, 2013), quoting Purnell v. City of Akron, 925 F.2d 941, 950 (6th Cir. 1991). Purnell also makes clear that an intervenor, even an intervenor as of right, need not have either the same standing required to initiate a lawsuit nor a specific legal or equitable interest in the subject-matter of the case. Id. at 948. The inquiry as to the interest claimed by the intervenor is necessarily fact-specific, see id., and "close cases should be resolved in favor of recognizing an interest under Rule 24(a)...." Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1247 (6th Cir. 1997).

The fact-specific inquiry in this case focuses on the following. First, the state court litigation is related to this foreclosure action in the sense that the judge in that case has authorized a receiver to operate a business on the property and, at least implicitly, has recognized the existence of a lease for some portion of the property in favor of Hocking Peaks LLC, the business for which the receiver has been appointed. Second, Mr. Gemmell is one of three principals in Hocking Peaks, LLC, a company which entered into a 99-year lease for the property. Third, the receivership order in the state court case enjoins Mr. Anthony from entering into portions of the property (the "park site") without written permission from the state court receiver. Fourth, the receivership order in this case permits the federal court receiver, under indeterminate standards, to reject and disregard any lease on the property - presumably including Hocking Peaks' lease. Fifth, that order appears to authorize the receiver to retain Mr. Anthony and to give him access to any or all of the property. It also suggests that the federal court

-6-

receiver may treat the state court receiver or his agents as trespassers and may seek criminal charges to be brought against them. It should also be noted that the zipline equipment on the property is apparently owned by Mr. Gemmell or by Hocking Peaks.

What inferences can be drawn from these facts? Certainly, it is a fair inference that the property in question is now the subject of two receivership orders, one premised upon a leasehold interest and the other on a mortgage interest. Further, those orders appear to conflict substantially; it is not a stretch to imagine that, in attempting to carry out the duties imposed by the state court order, the state court receiver might well violate the federal court order. There is thus a substantial possibility that, should the federal court receiver exercise his powers, the ability of the state court receiver to operate Hocking Peaks, LLC, could be adversely affected. That, in turn, could affect Mr. Gemmell's financial interests.

It may well be true that Mr. Gemmell does not have an individual interest in the foreclosure; he is not a creditor nor does he claim an ownership interest in the property (other than the ziplines). On the other hand, he may well suffer a financial loss should the property become unavailable to the state court receiver either as a result of a foreclosure sale or, more immediately, as a result of the receivership order entered by this Court. His interest in contesting that order is not adequately represented by any existing party and could be impeded in his absence.

The Court is persuaded that under the liberal standards to be applied in this circuit, Mr. Gemmell has a sufficient interest in this case to support intervention as of right. Even in other circuits, where the test may be more stringent, his interest would qualify. For example, in <u>New Orleans Public Service, Inc. v. United Gas Pipeline Co.</u>, 732 F.2d 452, 463 (5th Cir. 1984),

-7-

the court made this observation about the rule's requirement that an intervenor have a legally-protectable interest:

> By requiring that the applicant's interest be not only "direct" and "substantial," but also "legally protectable," it is plain that something more than an economic interest is necessary. What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant.

The law recognizes the right of a leaseholder to operate a business on leased premises, and the Hocking County Court of Common Pleas has recognized Mr. Gemmell's interest, as a principal of Hocking Peaks, LLC, to have that business placed into receivership and for the receiver to operate a business on the same property that is subject of this case and the subject of the order appointing a federal receiver.  That is sufficient under the applicable legal standard.  Mr. Gemmell may not be able to contest the foreclosure itself, but he should be allowed to raise his claim that the receivership order is in contravention of the state court's prior order and should be vacated or modified.

### III.  Recommendation

For these reasons, it is recommended that the motion to intervene (Doc. 12) be granted and that the intervenor be directed to submit an intervenor complaint within fourteen days of the Court's order, should this Report and Recommendation be adopted.

### IV.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge
