IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Timber View Properties, Inc.,    :

       Plaintiff,                 :

   v.                             :     Case No. 2:15-cv-2855

                         :     JUDGE GEORGE C. SMITH

M&T Property Investments LTD,     :     Magistrate Judge Kemp

       Defendant.                 :


REPORT AND RECOMMENDATION

On January 29, 2016, the undersigned submitted a report and recommendation to the District Judge recommending that a motion to intervene, filed by movant Karry Gemmell, be granted. Objections were filed.  In part, the objectors (plaintiff Timber View Properties, Inc. and defendant M&T Property Investments LTD) raised new arguments in opposition to the motion to intervene and submitted documents not previously presented to the Court. Consequently, the case was recommitted to the Magistrate Judge for consideration of those documents and arguments.  For the following reasons, the Court adheres to its earlier recommendation that the motion to intervene be granted.

I.  Introduction

As the Court noted in the prior Report and Recommendation (Doc. 26),

> This case began in this Court as a straightforward mortgage foreclosure action.  Plaintiff Timber View Properties, Inc., a Florida corporation, obtained, by assignment from the Citizens Bank of Logan, Ohio, mortgages on real property located in Hocking County, Ohio, and owned by Defendant M&T Property Investments LTD, an Ohio limited liability company.  Timber View seeks to foreclose on the mortgages and have the property sold at foreclosure sale.  In its complaint, it also requested the appointment of a receiver pursuant to Ohio Rev. Code §§2735.01 *et seq*.  <u>See</u> Doc.

2.

On the same day the complaint was filed, Timber View moved for appointment of a receiver. (Doc. 3). In its motion, it represented that M&T consented to the appointment of a receiver and it identified a proposed receiver. The following day, the Court granted the motion. Its order (Doc. 4) appointed attorney David A. Skrobot as the receiver. The order, prepared by the parties, granted Mr. Skrobot plenary power to deal with the property in question, as described in Ohio Rev. Code §2735.04. It contained additional provisions, however, which provided that representatives of M&T, including Mark Anthony (the principal of M&T) would have unimpeded access to the property; that the receiver could contract to have Mr. Anthony become involved in the management of the property; that the receiver could "disregard, without prior order of this Court, any lease" which is (although it does not explain who makes this determination) "incomplete, ineffective on its face, not in conformity with the statute of frauds, and/or legally inoperative as to third parties due to a failure to properly execute and/or record the instrument required by law." (Doc. 5, at 7). The receiver was authorized to treat such leasehold interests as void and to seek criminal charges against anyone, including an "occupying claimant," who refused a request by the receiver to leave the property. Id. Further, the order directs any person who has any documents or records pertaining to the property or any income associated with the property or "business activities presently and/or previously associated with the Receivership Estate" to turn those records and income over to the receiver. Id. at 8. Lastly, anyone claiming any interest in the property was enjoined from "commencing or continuing any action at law or suit or proceeding in equity to ... enforce any claim and/or right against all or any part of the property ... or its business operations ....." Id. at 10.

Unbeknownst to this Court, and not disclosed by either Timber View or M&T or their counsel, litigation involving this very property had been ongoing for some time in the Court of Common Pleas of Hocking County, Ohio. A receiver had also been

-2-

appointed in that case, and the state court judge had issued a number of other orders as well.  Because some of the concerns expressed in the objections relate to the nature and content of the orders, the Court will recite them here in some detail, including some of the factual findings made by that court.

## II.  The State Court Litigation

### A.  The June 18, 2013 Order

As reflected in the prior report and recommendation, proposed intervenor Karry Gemmell was one of the Plaintiffs in the state court action (the other plaintiff was Hocking Peaks, LLC, a company owned by Mr. Gemmell, a company owned by Mr. Gemmell's father, and Mark Anthony, who is also the owner of M&T, the defendant in this case).  Hocking Peaks was formed in 2010 to operate a zipline and other outdoor adventure-type activities, and it leased the property to do so from M&T - including some of the property which is the subject of the foreclosure action filed by Timber View.

It is probably an understatement to say that things did not go as planned.  In 2012, according to the state court's factual findings, Mr. Anthony, without Mr. Gemmell's knowledge and consent, opened a new bank account for Hocking Peaks; wrote a check on that account for $35,000, purportedly representing rent for the property (although the rent which had accrued to that point was substantially less); started up a new company which he named "Hocking Peaks Adventure Park, LLC"; and transferred over $16,000 from Hocking Peak's bank account to an account in the name of the new company.  The trial court found these and other events to represent a course of self-dealing and a breach of fiduciary duty on Mr. Anthony's part, which was damaging Hocking Peaks' business, and it granted a preliminary injunction addressing certain financial aspects of Hocking Peaks' business.

### B.  The April 15, 2014 Order

-3-

By the time the next order was issued, Hocking Peaks Adventure Park, LLC, had become a defendant in the state court case, as has Marlin Trace Investments, Ltd., which the trial court said was another name for M&T.  The trial court made additional factual findings, including the fact that the zip lines which had been installed were paid for by way of a draw on a line of credit taken out by Gem Coatings, a company owned by Mr. Gemmell, and that as a result of a default on the line of credit, judgment had been taken against Mr. Gemmell by Chase Bank.  Also, the parties' joint business had been operated under the name of "Hocking Peaks Adventure Park" and that name had appeared on various documents including advertising materials. When Mr. Anthony started his new business (Hocking Peaks Adventure Park, LLC), he did not pay Hocking Peaks for the use of the name.  Further, he used the same phone number for both businesses during 2013.

Ten days after the state court issued its preliminary injunction, Mr. Anthony purported to dissolve Hocking Peaks, LLC. According to the state court, he also apparently misappropriated some cash receipts belonging to that business, and used its business receipts for unrelated expenditures for some of Mr. Anthony's other businesses.  The Hocking Peaks business also paid over $20,000.00 in real property taxes for M&T's property (again, some of the property involved in the foreclosure action filed in this Court) even though, under the parties' agreement, M&T was to pay those taxes itself.  Lastly, Mr. Anthony admitted to not paying payroll or income taxes for Hocking Peaks' employees.

As a result of these findings, the state court reaffirmed its earlier conclusions that Mr. Anthony had been engaging in a course of self-dealing and that the plaintiffs were likely to prevail in the case.  The state court found that any dissolution of Hocking Peaks was not done properly, that the operating

-4-

agreement for that company was breached, and that it was required to extend its orders to Mr. Anthony's new company, Hocking Peaks Adventure Park, LLC.  It directed that a single bank account be used for the Hocking Peaks business, that the funds in that account be used only for that business, and that neither Mr. Gemmell or Mr. Anthony be permitted to withdraw any money from the account without the other's written consent.

### C.  The June 13, 2014 Order

The next order of significance was issued on June 13, 2014. The motion precipitating that order was the plaintiff's motion for the appointment of a receiver over the new company, Hocking Peaks Adventure Park, LLC.  The trial court, noting that Mr. Anthony had engaged in "a great deal of self-dealing" and that his conduct took the case "far outside a simple dispute as to the management and direction of the businesses at issue," concluded that unless a receiver were appointed for the new company, "the involved businesses would fail and the investments made would be misappropriated."  Reg Martin of Martin Management Service was appointed as receiver, not for Hocking Peaks, LLC, but for Hocking Peaks Adventure Park, LLC, and A.C. Strip was appointed as his attorney.

### D.  The March 26, 2015 Order

This order was issued based on a request made by the receiver to borrow funds and re-open the adventure park.  The court granted that request and, in addition, enjoined both Mr. Gemmell and Mr. Anthony from interfering with the receiver's efforts to reopen and operate the park and also "from entering the site where the park is located (i.e. property subject to this foreclosure action) without specific written consent from the Receiver."  The receiver was authorized to operate the park for five years and to pay rent for the premises in the amount of $500.00 per month.

-5-

E.  <u>The State Court of Appeals Order</u>

Mr. Gemmell has also submitted a copy of an order from the Fourth District Court of Appeals which was filed on April 4, 2016.  <u>See</u> Doc. 33.  Without going into great detail, that court, in a 28-page opinion, affirmed the state trial court's order appointing a receiver for Hocking Peaks Adventure Park, LTD.

F.  <u>Other Pertinent Documents</u>

The parties have also submitted copies of other pertinent documents.  The Court will summarize those which are of particular relevance to the issues raised by the motion to intervene.

1.  <u>State Court Receiver's Reports</u>

Mr. Gemmell has submitted all of the reports which the state court receiver, Mr. Martin, has filed.  <u>See</u> Doc. 31.  They show that business operations ceased in June, 2014 due to the absence of liability insurance for the company and the possibility that the zip lines were in need of repair.  The receiver expressed concern, in his first report, that the business did not own the property on which it was being operated, and he was preparing a motion which would allow him to use the property pursuant to the term of the initial lease agreement, which he described as being "still in place."  In his third report, the receiver said he was looking for a third party to purchase the business, an option that, by the time the fifth report was filed, did not seem to be viable.  The sixth report, which contemplates re-opening the park, again refers to the original lease as valid and as a critical part of the "go forward plan," along with a court order that neither of the parties be permitted on the park premises without consent of the receiver.

The receiver's seventh report followed the March 26, 2015 order.  It outlined a plan to reopen the park in short order. The receiver also reported that Mr. Anthony was threatening to

-6-

treat him as a trespasser unless insurance were obtained and had also sent the receiver threatening emails.  The receiver suggested a motion to hold Mr. Anthony in contempt might be needed.  The receiver also proposed that Mr. Anthony's access be restricted to an area encompassing his home and access to it, and he said that he intended "to utilize the remainder of the property for the park operations."  In his eighth report, made in August, 2015 (a month before the foreclosure action was filed), the receiver reported that the park was still not open due to delays in obtaining financing and obtaining appropriate liability insurance.

Another exhibit to Doc. 31 is an affidavit from the state court receiver dated March 2, 2016.  There, he explains that this Court's order appointing its own receiver has prevented the reopening of the park because Mr. Martin cannot enter the property under the terms of that order.  Mr. Martin described the zip line equipment and said it could be removed without damaging the real estate.  He also said that after the state court order authorized the rental payments, the first one was rejected by Mr. Anthony, and no more had been tendered since it was clear they would not be accepted.  Lastly, he stated that the federal court receiver, David Skrobot, had hired Mr. Anthony to operate a business on the property, and that Mr. Skrobot had asked Mr. Martin to sign an affidavit stating that he had no interest in the property, something Mr. Martin believed to be inaccurate.  He did not sign the affidavit.

### 2.  Other Documents

The parties to this case have also submitted some documents, primarily as part of their objections to the Report and Recommendation.  The Court will summarize them as well.

As part of Doc. 27, M&T submitted a copy of the Hocking Peaks Adventure Park Operating Agreement.  That agreement states,

in ¶15.9, that "Hocking Peaks Adventure Park will have a 99 year lease so long as company is engaged in current business.  The monthly rate will be 500$."  It also provided an affidavit from Mr. Anthony (corrected in Doc. 28) which confirms that M&T (not Marlin Trace, as the initial affidavit said) owned the property on which the business operated from 2010 to 2012 and that it leased the property to Hocking Peaks.  Mr. Anthony's affidavit also says that Hocking Peaks never made any lease payments and that notice of termination of the lease was given on March 12, 2013.  He made a number of additional assertions in his initial affidavit which are not corrected in the second affidavit, but simply omitted from it.  Finally, M&T attached a copy of Mr. Gemmell's motion for a receiver, filed in the state court action, which states that the lease in question is "null and void."  That motion also asked the court to permit the receiver to continue with the operation of the company, however, which is what the state court ultimately did.

### 3.  Mr. Skrobot's Report

David Skrobot, the receiver appointed by this Court, filed a preliminary report on February 16, 2016.  He reports that a preliminary judicial report on the property shows it to be owned by M&T free and clear of any leasehold interest.  He claims to have confirmed with Mr. Martin, the state court receiver, that Mr. Martin's receivership did not extend to the real property (something which Mr. Martin's affidavit takes issue with) and that Mr. Martin has not tendered any rental payments.  He also said he had not seen any purported 99-year lease and that the original lease document was for a term of five years.  A copy of that lease is attached to his report.  It does contemplate at least one five-year renewal.

## III.  Analysis

### A.  The Prior Recommendation

-8-

As the Court stated in the prior Report and Recommendation,

Rule 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Mr. Gemmell's motion to intervene is clearly timely. Further, no existing party claims to represent his interest in this action adequately (they deny that he has any interest to represent). The crux of the disagreement here concerns the existence of a legally protected interest in the property that is the subject of this foreclosure action.

> There is little dispute about the general principles which govern intervention as of right. "Federal Rule of Civil Procedure 24, which governs interventions, is 'broadly construed in favor of potential intervenors.'" Gillie v. Law Office of Eric A. Jones, LLC, 2013 WL 4499955, *1 (S.D. Ohio Aug. 21, 2013), quoting Purnell v. City of Akron, 925 F.2d 941, 950 (6th Cir. 1991). Purnell also makes clear that an intervenor, even an intervenor as of right, need not have either the same standing required to initiate a lawsuit nor a specific legal or equitable interest in the subject-matter of the case. Id. at 948. The inquiry as to the interest claimed by the intervenor is necessarily fact-specific, see id., and "close cases should be resolved in favor of recognizing an interest under Rule 24(a)...." Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1247 (6th Cir. 1997).

Doc. 26, at 5-6. The Court concluded that the state court had recognized a lease interest on the part of Hocking Peaks LLC and gave the state court receiver certain powers over the real property in question. It also concluded that the orders of that

-9-

court and this one were in conflict, that the state court receiver might well be in violation of a federal court order if he attempted to exercise the powers granted to him by the state court, and that all of this might have a substantial impact on Mr. Gemmell's interest in the business over which the receiver had been appointed.  It therefore concluded that under the "liberal standards to be applied in this circuit," Doc. 26, at 7, the motion to intervene should be granted.

### B.  The Objections

The objections to that recommendation, from both M&T and from Timber View, can be stated succinctly.  Those parties assert that Hocking Peaks, LLC, never had a 99-year lease on the property; the actual lease expired by its terms on March 29, 2015, which (according to M&T) was before the state court appointed a receiver (although the record suggests that order actually went on in June, 2014); that any lease was effectively terminated for default, which default included Mr. Gemmell's action in seeking a receiver; that Mr. Gemmell is judicially estopped from arguing that there is a valid lease because of the statement made in his motion to appoint a receiver to the effect that the lease was null and void; that no receiver was ever appointed for Hocking Peaks, LLC; that Mr. Gemmell has no legal interest in the property or in the zip lines; and that he has adequate remedies to protect any interest he might be asserting by way of the state court action.  Those parties also argue that the federal receiver will protect any such interest claimed by Mr. Gemmell.

### C.  The Receiver's Motion

Interestingly, the receiver has also taken a position with respect to proceedings to be held on the motion to intervene.  In a motion filed on May 3, 2016, he moved for a stay of a decision on the matter pending a hearing to determine the nature, if any,

of Mr. Gemmell's interest in the property.  Mr. Gemmell has
opposed that motion, and the receiver recently filed a reply.

D.  <u>Analysis</u>

Despite the arguments presented in the objections, which are
coupled with some additional documents not originally presented
to the Magistrate Judge, the Court remains convinced that
intervention is appropriate in this case.  The reasoning behind
that conclusion can be stated fairly simply.

Again, the primary issue here is whether the proposed
intervenor, Mr. Gemmell, has an interest in this matter which the
current parties do not adequately represent.  Despite the
argument that the federal receiver will protect Mr. Gemmell's
interest, the record demonstrates that the receiver has taken the
position that Mr. Gemmell has no interest here, and that the
receiver's powers are at odds with the grant of authority to the
state court receiver who was specifically appointed to guard Mr.
Gemmell's interest in the business he operated jointly with Mr.
Anthony.  Neither Timber View nor M&T will adequately protect Mr.
Gemmell's interest; both have actively opposed his intervention,
and M&T's principal, Mr. Anthony, is actively embroiled in the
state court litigation as an adversary to Mr. Gemmell.  The Court
similarly rejects the notion that Mr. Gemmell can adequately
protect his interests through the state court litigation, since
the conflicting orders relating to the two receivers may well
impair his ability to do so.  Consequently, if it is determined
that Mr. Gemmell has an interest to protect, he is entitled to
intervene.

The receiver has suggested that this Court hold a hearing on
the merits of Mr. Gemmell's claimed interest.  That is not a
common practice.  "In evaluating the motion to intervene, the
district court must accept as true the non-conclusory allegations

-11-

of the motion and cross-complaint." <u>Lake Inv'rs. Dev. Grp. v.</u>
<u>Egidi Dev. Grp.</u>, 715 F.2d 1256, 1258 (7th Cir. 1983) Further,
"[a]n interest that is otherwise sufficient under Rule 24(a)(2)
does not become insufficient because the court deems the claim to
be legally or factually weak." <u>Brennan v. N.Y.C. Bd. of Educ.</u>,
260 F.3d 123, 130 (2d Cir. 2001).  Although a good deal of
information outside the proposed intervenor complaint has been
submitted, the vast majority of it consists of orders of the
state court, and not traditional evidentiary materials.  The
record is sufficient to permit the Court to determine whether Mr.
Gemmell has alleged an interest of the type which supports
intervention.

As to that question, "[w]hether an applicant for
intervention demonstrates sufficient interest in an action is a
practical, threshold inquiry.  No specific legal or equitable
interest need be established." <u>Greene v. United States</u>, 996 F.2d
973, 976 (9th Cir. 1993).  Equitable interests alone may support
intervention. <u>Cf. Reliastar Life Ins. Co. v. MKP Investments</u>,
565 Fed.Appx. 369, 373 (6th Cir. Apr. 29, 2014).  Mr. Gemmell
clearly has an equitable interest here, apart from any
determination as to whether the lease executed pursuant to the
Hocking Peaks operating agreement remains valid.  That conclusion
flows from the actions taken by the state court.

First, the state court necessarily concluded that Mr.
Gemmell has an interest in Hocking Peaks Adventure Park, LLC.
That interest arises from his investment in Hocking Peaks,
coupled with the judge's finding that assets of that entity were
used to fund Hocking Peaks Adventure Park.  If that interest did
not exist, there would have been no basis upon which to appoint a
receiver over Hocking Peaks Adventure Park at Mr. Gemmell's
request.

Second, the state court also necessarily concluded that

-12-

Hocking Peaks Adventure Park had a right to conduct business on the property. Again, it is clear from the order appointing the receiver that the receiver was given that authority, and that the state court judge was exercising some measure of control over the property, for the benefit of Hocking Peaks Adventure Park and Mr. Gemmell, by limiting Mr. Anthony's access to it. If M&T, which is Mr. Anthony's company, had unfettered title to and use of the property, the state court could not have made such an order. Whether that order was based on the theory that the payments which Mr. Anthony made to himself were sufficient to keep the lease in place, or some theory of estoppel, is not important; what is important is that the state court clearly perceived that Mr. Gemmell, the plaintiff and movant there, had, through the tracing of assets into Hocking Peak Adventure Park, a legally protectable interest in the operation of the business on the same property which is subject to the foreclosure action here and the order appointing a federal receiver over that property. That satisfies the "practical" inquiry required under Rule 24 and justifies Mr. Gemmell's intervention. Whether Mr. Gemmell will ultimately succeed in demonstrating that his interest should have some priority in these foreclosure proceedings, or that it justifies modification of the order appointing the federal receiver, are questions for another day. Given his claimed interest, however, he should be permitted to raise those arguments here.

## IV. Recommendation

For these reasons, it is recommended that the motion to intervene (Doc. 12) be granted and that the intervenor be directed to submit an intervenor complaint within fourteen days of the Court's order, should this Report and Recommendation be adopted. It is further recommended that the receiver's request to stay recommitment and for an evidentiary hearing (Doc. 34) be

denied.

### V.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-14-