**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

TIMBER VIEW PROPERTIES, INC.,

        **Plaintiff,**

        v.

                            **Case No. 2:15-cv-2855**
                            **JUDGE GEORGE C. SMITH**
                            **Magistrate Judge Chelsey M. Vascura**

M&T PROPERTY INVESTMENTS LTD,

        **Defendant.**


**OPINION AND ORDER**

This matter is before the Court upon Plaintiff's and Intervenor's briefs in response to the Court's July 20, 2018 and June 13, 2019 Orders directing briefing on the issue of whether this Court has subject-matter jurisdiction over Plaintiff's foreclosure claims. (ECF Nos. 80, 95). For the following reasons, Plaintiff's foreclosure claims are **DISMISSED** for lack of subject-matter jurisdiction.

## I.      BACKGROUND

A detailed history of the underlying facts was provided by Judge Kemp in his June 17, 2016 Report and Recommendation (ECF No. 38). A streamlined version is provided here.

Mark Anthony is the sole member of Defendant M&T Property Investments LTD, an Ohio LLC, which is the owner of the property at issue in this foreclosure action. Anthony maintains his residence on a portion of the property. Intervenor Karry Gemmell entered into a business arrangement with Anthony in 2009 whereby they would form a new company, Hocking Peaks, LLC ("Hocking Peaks"), to operate a zip line business on a portion of the property. Gemmell,

through one of his other solely-owned business entities, purchased the zip line infrastructure and had it installed on the property. Both the operating agreement for Hocking Peaks and a separate lease agreement gave Hocking Peaks a lease interest in the property with an initial five-year term expiring March 29, 2015. The lease agreement provided for renewal at Hocking Peaks' option.

## A. State Court Litigation

The Hocking Peaks business was, to put it mildly, troubled. Both Anthony and Gemmell converted funds from the business for their own use. Gemmell, along with Hocking Peaks, LLC, commenced an action in the Hocking County Common Pleas Court on March 6, 2013 against Anthony for conversion, breach of contract, breach of fiduciary duty, and several other causes of action. On June 18, 2013, the state court granted a preliminary injunction restricting Anthony's ability to open any additional accounts, or make withdrawals from existing accounts, belonging to Hocking Peaks. However, unbeknownst to Gemmell or the state court, Anthony had already filed a dissolution of Hocking Peaks, LLC with the Ohio Secretary of State on April 30, 2013. And on August 13, 2013, Anthony created a new company named Hocking Peaks Adventure Park, LLC ("HPAP") with himself as the sole member. Anthony then closed the previous bank accounts belonging to Hocking Peaks and transferred those assets to new accounts established for HPAP. All of this was done without notice to Gemmell or the state court.

Once the dissolution of Hocking Peaks and the creation of HPAP came to light, the state court determined that Gemmell had an interest in HPAP as the successor entity to Hocking Peaks and ultimately appointed Reg Martin as receiver over HPAP on June 13, 2014 to protect the business from further conversion by Anthony. Martin's first act as receiver was to shut down operations of the zip line park because Anthony had been operating the business without liability insurance and without proper maintenance of the zip line infrastructure.

2

The initial order appointing the receiver did not enumerate the receiver's powers, but in a March 26, 2015 order, the state court permitted Martin to borrow $100,000 to renovate and re-open the zip line park; permitted Martin to "operate the park for up to five years or until the receivership is closed pursuant to further orders of the Court"; and ordered that both Gemmell and Anthony were "prohibited from interfering with the Receiver's efforts to renovate, re-open and operate the park and further from entering the site where the park is located with [sic] specific written consent from the Receiver." (ECF No. 12-7).

Anthony vigorously protested Martin's appointment, filing two appeals with the Fourth District (neither of which were successful). He also attempted to prevent Martin from carrying out his receivership duties by locking the park gates and threatening Martin with trespassing charges and guard dogs.

## B.    Federal Litigation

Dissatisfied with the direction of the state court litigation, it appears Anthony reached an arrangement with a friend, Jack Beatley, whereby Beatley's company, Plaintiff Timber View Properties, Inc., would purchase the mortgage loan on the property owned by M&T. The mortgage was assigned to Timber View on July 1, 2015. On September 24, 2015, Timber View commenced the present action in this court seeking damages for breach of the note secured by the mortgage as well as foreclosure of the property.

The same day, Timber View also filed an unopposed motion to appoint a receiver over the property, nominating David Skrobot as receiver. M&T consented to the motion and the parties submitted an agreed order appointing Skrobot. The agreed order was unusual in that it expressly permitted Skrobot to engage Anthony as his agent with full access to the property, to exclude anyone from the property on pain of trespassing charges, and to impose restrictions on "others who make regular and/or periodic use" of any part of the property.

None of these documents disclosed the existence of the state court action or the appointment of a receiver over a business operating on the property. Because this appeared to be a straightforward foreclosure case in which the creditor and debtor were attempting to resolve the dispute, the Court entered the parties' agreed order appointing Skrobot as receiver over the property. (ECF No. 5).

Shortly after Skrobot was appointed, he sent a letter to Martin informing him of Skrobot's appointment as receiver over the property and asserting that Martin was not to take any action as to the property without Skrobot's permission, that Anthony was Skrobot's agent and was authorized to conduct business on the property, and that Martin was not to interfere with Anthony's activities as the receiver's agent. The letter further warned Martin that if he failed to comply, he would be held in contempt and subject to a fine or imprisonment.

Upon learning of the federal action, Gemmell sought, and eventually obtained, intervention. Judge Kemp determined that HPAP likely had a lease interest in the property, which gave Gemmell an interest in the property through his interest in HPAP. Although not reflected in the record, the parties have represented to the Court that they reached a consensus with Judge Kemp that the federal action would be stayed pending the outcome of the state court litigation, which went to trial in November 2016.

## C.    State Court Judgment

After a four-day bench trial, Judge Wallace of the Hocking County Common Pleas Court found on March 21, 2018 that both Gemmell and Anthony had converted funds from the Hocking Peaks business, but after offsetting the amounts converted by Gemmell, Anthony was liable to Gemmell for approximately $536,000. In the final judgment entry, Judge Wallace stated that "this court believes that Mr. Anthony and Mr. Beatley are friends and that Mr. Anthony orchestrated the filing of the federal case to avoid the actions of the state receiver." (ECF No. 60-1 at 48–49).

Judge Wallace further characterized Anthony's conduct regarding the Hocking Peaks business and the state court receiver as "outrageous" and "egregious." For these reasons, he ordered Anthony to pay the state receivership costs and attorney's fees totaling approximately $121,000.

Anthony appealed this judgment to Ohio's 4th District Court of Appeals. On February 5, 2019, the appellate court dismissed the appeal for lack of a final appealable order. (ECF No. 94-1). The appellate court noted that "the [common pleas] court appears to have addressed the claims appellees raised in their first complaint, which the amended complaint superseded." (*Id.* at 17.) As a result, the common pleas court's decision did not dispose of all the claims, and because it did not include an express determination that "there is no just reason for delay," the decision did not constitute a final appealable order. (*Id.* at 18).

After remand to the Hocking County Common Pleas Court, Judge Wallace filed a judgment entry on August 29, 2019, which constitutes a final appealable order and outlines all of the parties' claims and renders judgment as to each.

## D.     Motion to Remove the Federal Receiver

On April 30, 2018, Gemmell filed a motion to remove Skrobot as receiver and to proceed with foreclosure of the property. (ECF No. 67). Gemmell argues that Skrobot failed in his duties to preserve the property (by barring Martin from renovating and reopening the zip line park) and misled the Court by failing to disclose the existence of the state court action. Moreover, Gemmell argues a receiver is not necessary to protect the property at all, which is bolstered by the federal receiver's immediate engagement of the property owner as his agent. Finally, Gemmell argues that his certificate of judgment against the property (that he obtained as a result of Judge Wallace's judgment in his favor) provides him with a sufficient interest to compel foreclosure.

Both Timber View and Skrobot opposed the motion to remove the receiver. (ECF Nos. 72–73). M&T, the debtor and property owner, did not file an opposition brief, likely because

M&T has not been represented by counsel for more than two years.  The Court cautioned M&T that as a corporate entity, it could not appear before the Court except through counsel, and that failure to obtain counsel could lead to entry of default judgment against M&T.  (ECF No. 80).

**E.      Subject-Matter Jurisdiction**

Upon reviewing the briefing related to the motion to remove the receiver, the Court began to have doubts about its subject-matter jurisdiction over Plaintiff's foreclosure claims given the Hocking County Common Pleas Court's exercise of jurisdiction over a portion of the Property at issue.  As stated in the Court's Order of July 20, 2018:

> The state court appointed a receiver over Hocking Peaks Adventure Park, LLC and on March 26, 2015, expressly authorized that receiver to operate the business on, and to exclude other persons from, the portion of the Property on which the business was operating.  The state court's exercise of jurisdiction over a portion of the Property may have deprived this Court of jurisdiction over the same.

(ECF No. 80).  The Court accordingly ordered the parties to submit simultaneous briefs on the issue of whether this Court has subject-matter jurisdiction over Plaintiff's foreclosure claims and stayed all other pending motions.  (*Id.*).  After several extensions were granted in favor of mediation, which was ultimately unsuccessful, Timber View and Gemmell filed briefs on subject-matter jurisdiction on July 10, 2019.  (ECF Nos. 98–99).  M&T, still unrepresented by counsel, did not file a brief.  The Court now considers its subject-matter jurisdiction, as it must before taking any other actions in this case.

## II.      STANDARD OF REVIEW

Without subject-matter jurisdiction, a federal court lacks authority to hear a case.  *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131, 1133 (6th Cir. 1990).  Accordingly, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3)).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining

to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle,* 74 U.S. 506 (1868)).

Challenges to subject-matter jurisdiction generally arise through motions under Federal Rule of Civil Procedure 12(b)(1). Although the Court raised the issue of subject-matter jurisdiction *sua sponte* in this case, the relevant standards are the same. Motions to dismiss for lack of subject-matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject-matter jurisdiction. No presumptive truthfulness applies to the factual allegations. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). The plaintiff has the burden of establishing jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

## III.  DISCUSSION

Although final judgment has been entered in the state court action, it does not appear from the docket that the state court has yet terminated Martin's receivership over HPAP. *Milo v. Curtis*,

100 Ohio App. 3d 1, 6, 651 N.E.2d 1340, 1344 (9th Dist. 1994) ("[U]nless expressly limited when established, a receivership does not automatically end upon a change in circumstances or completion of the appointed task but, rather, continues until the court formally orders its termination."); *Whipps v. Ryan*, 10th Dist. Franklin No. 12AP–509, 2013-Ohio-4334, ¶¶ 28-29 (order approving receiver's final application for fees and costs did not automatically terminate receivership; further action by the court was required). Martin's receivership over HPAP therefore continues.

In granting Gemmell's motion to intervene, Judge Kemp determined that the state court exercised jurisdiction over the portion of the property on which HPAP was operating by appointing a receiver over HPAP and expressly permitting him to operate the business there and to exclude Gemmell and Anthony from the business area:

> [T]he state court also necessarily concluded that Hocking Peaks Adventure Park had a right to conduct business on the property. Again, it is clear from the order appointing the receiver that the receiver was given that authority, and that **the state court judge was exercising some measure of control over the property**, for the benefit of Hocking Peaks Adventure Park and Mr. Gemmell, by limiting Mr. Anthony's access to it.

(ECF No. 38 at 9–10) (emphasis added).

The state court's exercise of jurisdiction over the business portion of the property (which predated the filing of the federal complaint by at least several months) creates problems for this Court's exercise of jurisdiction over the same property. "It is a well-settled rule that when a State Court has taken possession of or jurisdiction over property in an *in rem* or *quasi in rem* proceeding, the Federal Courts cannot exercise jurisdiction over the same property in such a way as to interfere with the orderly disposition of the litigation by the State Court." *Jacobs v. DeShetler*, 465 F.2d 840, 842 (6th Cir. 1972). "If the two suits are *in rem* or *quasi in rem*, so that the court must have possession or control of the *res* in order to proceed with the cause and to grant the relief sought,

8

the jurisdiction of one court must of necessity yield to that of the other." *Id.*; *see also Palmer v. State of Texas*, 212 U.S. 118, 125 (1909):

> If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, **such property is withdrawn from the jurisdiction of the courts of the other authority** as effectually as if the property had been entirely removed to the territory of another sovereignty.

(Emphasis added). This means that the state court's appointment of a receiver with the power to enter, modify, manage, and exclude others from the portion of the property on which HPAP was operating removed that same portion of the property from this Court's jurisdiction for the pendency of the state court receivership.

Accordingly, this Court does not now, nor did it at the time the federal action was commenced, have the required subject-matter jurisdiction to adjudicate Timber View's foreclosure claims. The foreclosure claims must therefore be dismissed. *Citizens for a Better Env't*, 523 U.S. at 94; Fed. R. Civ. P. 12(h)(3). Moreover, Skrobot's appointment as receiver arose out of the foreclosure claims, meaning that this Court lacked jurisdiction to make that appointment. As a result, Skrobot's appointment as receiver must be vacated. Further, Gemmell's right to intervene is premised on his interest in the property. Because this Court cannot exercise jurisdiction over the property, this Court also cannot adjudicate Gemmell's claims and his intervention complaint must be dismissed.

Timber View's arguments do not convince the Court otherwise. This Court's July 20, 2018 Order that initially directed briefing on the issue of subject-matter jurisdiction made this Court's concerns plain: "The state court's exercise of jurisdiction over a portion of the Property may have deprived this Court of jurisdiction over the same." (ECF No. 80). Instead of responding to that concern, Plaintiff merely argues that subject-matter jurisdiction is satisfied by the parties' diverse citizenship under 28 U.S.C. § 1332. (ECF No. 99). Having failed to address the impact of the

state court's exercise of jurisdiction on this Court's ability to adjudicate Timber View's foreclosure claims, the Court finds no reason why the foreclosure claims should not be dismissed and the receivership vacated.

All that now remains of the federal action is Timber View's breach of contract claims against M&T for default on the relevant notes and mortgages. These claims do not require this Court to exercise *in rem* jurisdiction over the property and therefore would not conflict with the state court's jurisdiction. As M&T has ignored this Court's direction to obtain counsel and was warned this failure could lead to entry of default judgment, the Court now finds it appropriate to enter default against M&T as a sanction for failure to comply with the Court's order. Timber View may either move for default judgment against M&T on its breach of contract claims, or dismiss them voluntarily under Federal Rule of Civil Procedure 41(a).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that

- Timber View's foreclosure claims against M&T are **DISMISSED**, Skrobot's appointment as receiver is **VACATED**, and Gemmell's Intervention Complaint is **DISMISSED** for lack of subject-matter jurisdiction;

- The Clerk is **DIRECTED** to enter default against Defendant M&T;

- Timber View shall either move for default judgment on its remaining breach of contract claims against M&T or voluntarily dismiss the same **within 30 DAYS** of the date of this Opinion and Order; and

- All other pending motions (Gemmell's Motion to Remove the Receiver and Proceed with Foreclosure, Gemmell's Motion to Strike, Skrobot's Motion for Leave to File Surreply, and Tax Ease Ohio, LLC's Motion to Intervene) are **DENIED AS MOOT**.

The Clerk shall remove Documents 67, 78, 79, and 91 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**